AO 91 (Rev. 5/85) Criminal Complaint

FILED

JUN 2 5 2007

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

# United States District Court

DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V.

WILLIAM GURKA
North Smithfield, Rhode Island 02896

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 1:07MJ463A

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about 6/5/07, 6/13/07, 6/20/07 in ________ county, in the ________ District of RHODE ISLAND defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally distribute cocaine, a Schedule II controlled substance

in violation of Title 21 United States Code, Section(s) 841(a)(1) and (b)(1)(C).

I further state that I am a(n) Special Agent (Official Title) and that this complaint is based on the following facts:

See Attached Affidavit of Special Agent Michael J. Payne, Bureau of Alcohol, Tobacco, Firearms and Explosives

Continued on the attached sheet and made a part hereof: ☑ Yes ☐ No

[signature]
Signature of Complainant

Sworn to before me and subscribed in my presence,

6/25/07 at Providence, Rhode Island

Date — City and State

LINCOLN D. ALMOND
United States Magistrate Judge

Name & Title of Judicial Officer

[signature]
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

# AFFIDAVIT

I, Michael J. Payne, upon oath, do depose and say:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Providence Field Office, and have been so employed for approximately eight years. Prior to being employed as an ATF Special Agent, I was employed as a Deputy United States Marshal for over seven years during which I was assigned to a Organized Crime Drug Enforcement Task Force (OCDETF) for approximately one year.

2. I make this affidavit in support of the following:

A. A Search Warrant for the following described premises:

1. The premises described as 15 Brian Avenue, North Smithfield, Rhode Island, and further described as a two-story dwelling, white siding with red trim, with the number 15 posted next to the front door, and occupied by William GURKA.

B. Seizure Warrants for the following described vehicles:

1. a 1998 Chevrolet pick up truck, color red, VIN 1GCEK19S4WE231750, bearing Rhode Island registration 136703, and registered to William GURKA, 15 Brian Avenue, North Smithfield, Rhode Island.

2. a 2005 Dodge pick up truck, color blue, VIN 3D7LS38C85G785867, bearing Rhode Island registration 16978, and registered to William GURKA, 15 Brian Avenue, North Smithfield, Rhode Island.

C. An Arrest Warrant for and Criminal Complaint against William GURKA, charging him with on June 5, 2007, June 13, 2007, and June 20, 2007 the knowing and intentional distribution of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

I have observed the above-described premises and vehicles.

3. The information contained in this affidavit comes from my own participation in the investigation and from other ATF Special Agents and ATF Task Force Agents (TFA) who have been involved in this investigation.

4. During May and June 2007, TFA John Rabbitt was working undercover as a purchaser of cocaine. During this period, TFA Rabbitt was introduced to William GURKA (GURKA).

5. On June 5, 2007, TFA Rabbitt arranged with GURKA to meet him and purchase $200 worth of cocaine from GURKA. On that date, surveillance agents observed GURKA leave his residence at 15 Brian Avenue, North Smithfield, Rhode Island and drive in a 2005 Dodge pick up truck, color blue, bearing Rhode Island registration 16978, VIN 3D7LS38C85G785867, and registered according to records of the Rhode Island Division of Motor Vehicles to William GURKA, 15 Brian Avenue, North Smithfield, Rhode Island, to meet with TFA Rabbitt. GURKA met TFA Rabbitt in the parking lot of a liquor store in North Smithfield, Rhode Island. GURKA got out of the 2005 Dodge pick up bearing Rhode Island registration 16978, leaned through the passenger window of TFA Rabbitt's vehicle, took approximately two grams of cocaine from his hat, and delivered the cocaine to TFA Rabbitt. TFA Rabbitt paid GURKA $200 for the cocaine. The substance later field tested positive for the presence of cocaine. During the meeting, GURKA and TFA Rabbitt spoke about firearms, and GURKA told TFA Rabbitt that he was interested in obtaining a "cold," "throw away" .380 caliber pistol. GURKA further described to TFA Rabbitt a number of firearms that GURKA possessed. Based upon my training and experience, to me the term "cold" in reference to a firearm means a firearm that has not been used in a crime. Further, based upon my training and experience, to me the term "throw away" in reference to a firearm means a firearm that cannot be traced. The cocaine distribution was video recorded. The conversation between GURKA and TFA Rabbitt was audio recorded.

6. On June 13, 2007, TFA Rabbitt again arranged with GURKA to meet him and purchase $200 worth of cocaine from GURKA. On that date, TFA Rabbitt met with GURKA in the parking lot of a supermarket in North Smithfield, Rhode Island. GURKA arrived in the supermarket parking lot driving a 1998 Chevrolet pick up truck, color red, bearing Rhode Island registration 136703, VIN 1GCEK19S4WE231750, and registered according to records of the Rhode Island Division of Motor Vehicles to William GURKA, 15 Brian Avenue, North Smithfield, Rhode Island. GURKA got out of the pick up truck and entered the passenger door of TFA Rabbitt's vehicle. GURKA took approximately three grams of cocaine from his hat and delivered the cocaine to TFA Rabbitt. TFA Rabbitt paid GURKA $200 for the cocaine. The substance later field tested positive for the presence of cocaine. GURKA spoke about the quality of the cocaine and that he uses a digital scale to weigh it. TFA Rabbitt advised GURKA that he could introduce GURKA to someone who had access to firearms for sale. In referencing the firearm, GURKA stated that "if the time comes, if it ever comes, goes in the river." After GURKA left the parking lot in the 1998 Chevrolet pick up truck, he was followed by surveillance agents back to his residence at 15 Brian Avenue, North Smithfield, Rhode Island. The cocaine distribution was video recorded. The conversation between GURKA and TFA Rabbitt was audio recorded.

7. On June 20, 2007, TFA Rabbitt again arranged with GURKA to meet him and purchase $400 worth of cocaine from GURKA. On that date, TFA Rabbitt and Special Agent Edward Troiano, who was also working undercover, met with GURKA in the parking lot of a supermarket in North Smithfield, Rhode Island. GURKA arrived at the meeting driving the above described 1998 Chevrolet pick up truck bearing Rhode Island registration 136703. GURKA did not leave the pick up truck. GURKA delivered approximately four grams of cocaine to the agents who each paid GURKA $200 for the cocaine. The substance later field

tested positive for the presence of cocaine. After the cocaine delivery, GURKA asked TFA Rabbitt and Agent Troiano to go to his residence to view his motorcycle and further discuss a firearms transaction. GURKA and the agents drove to 15 Brian Avenue, North Smithfield, Rhode Island. During the meeting at 15 Brian Avenue, GURKA discussed firearms he owns, including a pistol with no serial number. Inside his residence, GURKA also displayed an assault-style rifle to Agent Troiano. GURKA and Agent Troiano discussed firearms that Agent Troiano had for sale, including a small caliber semi-automatic pistol with a silencer.

8. Records of NationalGrid show electric service for the premises at 15 Brian Avenue, North Smithfield, Rhode Island is in the name of William GURKA and has been since 1999.

9. Through documents on file with the Superior Court for the State of Rhode Island, I have learned that on June 20, 2005, William GURKA filed a complaint with the North Smithfield Police Department alleging that Debby Gurka, his ex-wife, entered his residence and stole a quantity of money. Gurka listed his residence as 15 Brian Avenue, North Smithfield, Rhode Island on a witness statement submitted to the North Smithfield Police Department.

10. I have written affidavits for, executed, or assisted in the execution of over 50 state and federal search warrants for cocaine and heroin, and for records, books, documents, and proceeds derived from the trafficking in controlled substances and illegal possession of firearms. I have received training on the subject of drug traffickers and their methods used to conceal their assets and the methods they use to maintain records of their assets and illegal narcotics transactions. Through my experience as an ATF Special Agent and as a Deputy United States Marshal, I have learned that drug dealers oftentimes possess firearms in their residences to protect their drug business, including the drugs and the proceeds derived from drug trafficking.

11. I have been involved in numerous seizures of controlled substances, including marijuana, heroin, and cocaine. I have been involved in numerous searches of dwellings and buildings out of which controlled substances have been sold or stored, and in which drug traffickers have resided.

12. Based upon my training and my experience, I have learned of, observed, or seized papers and photographs showing residency or occupancy of said premises; United States currency, which I believe to be the proceeds of drug trafficking; firearms; controlled substances; and keys for safety deposit boxes where the proceeds of drug trafficking could be stored. Furthermore, I know from my training and my experience that occupants of these premises keep on those premises, more often than not, documents and records such as telephone bills, mortgage or rental receipts, mail, photographs, and bank records indicating both the occupancy and ownership of those premises. I further note, based upon my training and my experience, that drug dealers oftentimes keep proceeds of their drug sales either in their homes and premises used by them or in safety deposit boxes. They do this to avoid forfeiture of said monies placed in bank accounts and to avoid detection of said proceeds by the Internal Revenue Service.

13. I state that there is probable cause to believe that William GURKA committed the

offenses described in paragraph 2C above. I state that there is probable cause to believe that the premises described in paragraph 2A contain the following items and things: cocaine; firearms; records and photographs indicating ownership, occupancy and control of the described premises; and proceeds, such as United States currency, derived from controlled substance transactions; all in violation of 21 U.S.C. § 841(a)(1). I further state there is probable cause to believe, pursuant to 21 U.S.C. § 881(a)(4), that the motor vehicles described in paragraph 2B above were used to facilitate the sale of controlled substances in violation of 21 U.S.C. § 841(a)(1).

Michael J. Payne
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Signed and sworn to before me
this 25 day of June, 2007 at
Providence, Rhode Island.

LINCOLN D. ALMOND
United States Magistrate Judge
District of Rhode Island